IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| LAWRENCE G. BASS, JR., ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner, ) <br> Social Security Administration, ) <br> Defendant. ) | Civil Action No. 4:14cv00003 <br><br> By: Joel C. Hoppe <br> United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Lawrence G. Bass, Jr. asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–422, 1381–1383f. This Court has authority to decide Bass's case under 42 U.S.C. §§ 405(g) and 1383(c)(3), and his case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I find that substantial evidence in the current record does not support the Commissioner's final decision that Bass is not disabled. Therefore, I recommend that the Court reverse the Commissioner's decision and remand the cause for rehearing under the fourth sentence of 42 U.S.C. § 405(g).

### I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for

1

that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (governing claims for DIB), 416.905(a) (governing adult claims for SSI). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to

2

his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Bass protectively filed for DIB and SSI on December 29, 2010. *See* Administrative Record ("R.") 72, 81. He was 50 years old, *id.*, and had worked most recently in the construction industry, R. 36, 87. Bass said that he stopped working on December 30, 2008, because of back pain, diabetes, headaches, depression, difficulty sleeping, and blurred vision.[1] *See* R. 72, 81. The state agency denied his applications initially in March 2011, R. 80, 89, and upon reconsideration in May 2011, R. 100–01, 110–11.

Bass appeared *pro se* at a hearing before Administrative Law Judge Brian Kilbane ("the ALJ" or "ALJ Kilbane") on September 5, 2012. R. 33–34. He testified about many of his alleged impairments and to the limitations those impairments caused in his functional activities. R. 39–42. A vocational expert ("VE") also testified as to Bass's ability to return to his past relevant work or to perform other work existing in the national and regional economies. R. 44–46.

---

[1] Bass previously filed for DIB in May 2009 alleging disability based on many of the same impairments at issue here. *See* R. 52. Administrative Law Judge Mark O'Hara ("ALJ O'Hara") issued a written decision denying Bass's claim on December 15, 2010, R. 67, and the Appeals Council declined to review that decision, R. 114. Although Bass was represented by counsel at the time, R. 157–58, he apparently did not ask a federal district court to review the Commissioner's final decision denying his first DIB claim. *See* R. 21.

3

In a written decision dated September 27, 2012, ALJ Kilbane concluded that Bass was not entitled to disability benefits.[2] R. 30. He found that Bass suffered from a severe spine disorder, but that the impairment was not presumptively disabling. *See* R. 24–25. The ALJ next determined that Bass had the residual functional capacity ("RFC")[3] to perform a full range of light work.[4] *See* R. 18, 29. Relying on the VE's testimony, ALJ Kilbane concluded that Bass was not disabled because he could return to his past relevant work as a security guard. R. 28.

ALJ Kilbane also gave two alternative reasons for denying Bass's claim. *See* R. 29. First, he found that the regulations directed a finding of "not disabled" based on Bass's age, education, work history, and ability to perform a full range of unskilled light work. *See* R. 28–29. Second, again relying on the VE's testimony, ALJ Kilbane found that Bass could perform certain light occupations existing in the national and regional economies. *See* R. 29, 45–46.

Bass's current attorney submitted additional medical records with his request for the Appeals Council to review ALJ Kilbane's decision. *See* R. 2, 3, 285–86, 387–409. The Appeals Council considered this evidence, but "found that th[e] information [did] not provide a basis for

---

[2] Noting that ALJ O'Hara's decision was the Commissioner's final decision regarding Bass's condition through December 15, 2010, ALJ Kilbane stated that he would limit his review of Bass's current applications to the period between December 16, 2010 and September 27, 2012. *See* R. 21.

[3] "RFC" is an applicant's maximum ability to work "on a regular and continuing basis" despite his impairments. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC takes into account "all of the relevant medical and other evidence" in the applicant's record and must reflect the "total limiting effects" of the applicant's impairments. 20 C.F.R. §§ 404.1545, 416.945.

[4] "Light work" involves lifting no more than twenty pounds at a time, but frequently lifting or carrying objects weighing ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can lift twenty pounds (and frequently lift or carry ten pounds) can perform light work only if he also can "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1999). The person must be able to do "substantially all of these activities" in order to "perform[] a full or wide range of light work." 20 C.F.R. §§ 404.1567(b), 416.967(b).

changing" ALJ Kilbane's decision. R. 2. The Appeals Council declined to review that decision, R. 1, and this appeal followed.

III. Facts

A.  *Evidence in the Record before ALJ Kilbane*

Medical evidence in the record before ALJ Kilbane shows that Bass has a history of chronic lower back pain and muscle spasms, cervical disc disease, and pain and weakness in his legs. *See* R. 291–92 (Apr. 2009); R. 312, 355–58 (Jan. 2010); R. 308, 336–37, 338, 340–42, 348, 349–50, (Feb. 2010); R. 330–33 (Mar. 2010); R. 369–70 (Mar. 2011); R. 381 (Apr. 2011). Diagnostic images taken in early 2010 showed "degenerative changes" in the thoracic spine, "mild anterior spurring" at L3, L4, L5, and possible spondylolysis at L5. *See* R. 312, 304, 308. Emergency department physicians regularly treated Bass's symptoms with prescription-strength medications including Vicodin, Percocet, Naproxen, Lortab, Ultram, and Flexeril. *See, e.g.*, R. 292, 308, 333, 336–37, 348, 357.

The original record contains very little medical evidence of Bass's physical condition after December 15, 2010, however. *See* R. 27, 361, 369–70, 381. A "Physician's Ready Report" from Danville-Pittsylvania Community Services documented without explanation that Bass was diagnosed with Type II diabetes and "chronic pain" on February 15, 2011. R. 360–61.

Bass completed a Pain Questionnaire and Adult Function Report on February 15, 2011. *See* R. 224–25, 229–36. Ruby Faulkner, Bass's live-in friend,[5] completed a Third-Party Adult Function Report on the same date. *See* R. 249–58. Bass reported experiencing chronic, constant pain in his lower back, neck, arms, and legs since 2002. *See* R. 224–25. Bass reported that on a

---

[5] When Ms. Faulkner submitted this report, she and Bass apparently lived in a house. A year and a half later at the administrative hearing, Bass testified that he then lived in a friend's pickup truck.

5

typical day in February 2011, he took a bath and got dressed, watched television, sat in the sun, ate dinner, and went to bed. *See* R. 229. He did not take care of others, prepare meals, do chores or yard work, or regularly engage in activities outside the home. *See* R. 231–33. He also reported that he "sometimes" needed help getting up from the toilet and dressing, bathing, or grooming himself. R. 230. He was able to drive independently for "short distances" and go shopping for about two hours every month. R. 232.

Bass reported that pain affected his ability to sit, stand, walk, climb, and lift. *See* R. 234. He estimated that he could walk less than one block without needing to stop and rest for at least forty-five minutes. *See id.* Bass also reported using a cane when he walked, although he acknowledged that the device had not been prescribed by a doctor. R. 235. Bass attributed his functional limitations and minimal daily activities to his chronic pain, muscle spasms, and tendency to fall. *See, e.g.*, R. 230, 233, 234. Ms. Faulkner's statements generally echoed Bass's statements. *Compare* R. 229–35, *with* R. 249–57.

State-agency physician Dr. Paula Nuckols, M.D., reviewed Bass's applications on March 3, 2011. *See* R. 78, 89. Dr. Nuckols found that Bass's severe spine disorder limited his ability to "lift heavy objects," but not to "move about satisfactorily."[6] R. 78, 89. Specifically, Dr. Nuckols found that Bass could lift, carry, push, and pull up to ten pounds frequently and up to twenty pounds occasionally; sit, stand, and walk for about six hours in an eight-hour day; and frequently crouch or stoop. *See* R. 77, 86. She also found that Bass had an "unlimited" ability to crawl, balance, kneel, and climb. *Id.* Dr. Nuckols acknowledged Bass's statement that he used a cane to

---

[6] Dr. Nuckols's report cites two treatment notes from Piedmont Access to Health Services that do not appear in the record filed with this Court. *See* R. 75, 84. According to Dr. Nuckols's summary, those notes showed that Bass's gait was "normal" in March and August 2010. *Id.*

6

walk, but she noted that it had not been prescribed by a doctor. *See* R. 74, 83. Ultimately, Dr. Nuckols concluded that Bass could perform a full range of light work. R. 75, 84.

Bass established care with the Free Clinic of Danville in March 2011. On March 8, he reported that his "legs hurt constantly," he was "losing control of both legs," and that he could not sleep "because of muscle spasms." R. 370. A note says that Bass "was taking Vicodin for pain and Flexeril," although it is unclear whether he was taking them at that time. *Id.*; *see also* R. 369. An unidentified healthcare provider assessed "back pain." *Id.* The record is unclear about what specific treatment, if any, the provider prescribed at this time.

State-agency physician Dr. Martin Cader, M.D., reconsidered Bass's applications on April 4, 2011. Dr. Cader adopted Dr. Nuckols's previous RFC assessment save for the minimal restrictions Dr. Nuckols placed on Bass's ability to crouch and stoop. *Compare* R. 108, *with* R. 77. Dr. Cader found that Bass did not have any postural limitations. R. 108.

Bass returned to the Free Clinic on April 5, 2011, for chronic back pain, falling, and weakness and numbness in his arms and legs. *See* R. 381. He reported that Vicodin had helped his pain in the past but that over-the-counter medications did not. *See id.* Bass also reported that he "walked regularly" and had a history of "numerous falls." *Id.* Nurse Phyllis Scarce, F.N.P., observed that Bass walked with a cane at this visit. *Id.* She assessed chronic back pain, started Bass on 50 mg Arthrotec three times daily for pain, and told him to follow up in four weeks. *See id.* Nurse Scarce also said that the Free Clinic would try to get Bass's April 2009 X-rays and neurology records from the University of Virginia. *See id.*

At his administrative hearing in September 2012, Bass testified that his primary impairments were "falling spells," muscle spasms, and severe pain in his neck, back, arms, and legs. R. 39. He estimated that he could walk for "about 50 feet" and sit or stand for "about 30

7

minutes" without significant discomfort. R. 39–40. Bass explained that he had to "get up and move around" after sitting for 30 minutes to relieve "terrible spasms in [his] back and legs." R. 40. Bass also testified that he now lived alone in a borrowed pickup truck. *See* R. 35–36. Bass testified that he spent his days visiting with friends at their shops and staying around his campsite. *See* R. 41. He testified that he had a driver's license, but he did not testify that he still drove independently. *See* R. 36.

Finally, Bass testified that he was currently receiving treatment at the Free Clinic of Danville. R. 39, 41. He explained that the Clinic had referred him to outside providers, but that the "other doctors won't see [him] because [he had] no insurance and no income." R. 39. Bass also testified that he was "having trouble getting [his] medications," and that the Clinic was trying to help him find affordable medications directly from the manufacturers. *See* R. 42.

B.   *ALJ Kilbane's Findings*

ALJ Kilbane concluded that Bass's spine disorder was severe, but not disabling. *See* R. 24–25, 28–29. He explained that the impairment was severe because it limited Bass's "ability to lift and carry heavy objects and to perform postural activities." R. 24. After reviewing the medical and other evidence in the record before him, ALJ Kilbane found that Bass's spine disorder "could reasonably be expected to cause . . . his alleged symptoms," but that Bass's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms were not credible to the extent they [were] inconsistent with" an RFC for a full range of light work. R. 25, 27. He also found "no medically documented condition expected to result in [Bass's] complaints of frequent falling." R. 27.

ALJ Kilbane's credibility analysis relied heavily on Bass's perceived lack of medical care during the relevant period. *See* R. 27–28. For example, he found that Bass visited the Free Clinic

8

on "only two occasions" in nearly two years, and that Bass was "not seek[ing] ongoing treatment" for his alleged "falling out spells and pain in his back, neck, shoulder, and legs." R. 27. ALJ Kilbane characterized Bass's treatment as "conservative" because no provider had "prescribed strong pain killing medication [or] other treatment" for Bass's "alleged pain." *Id.*

ALJ Kilbane also found that, "despite [his] complaints," Bass "reported that he walks regularly" and "testified that he drives a motor vehicle." R. 27. Ultimately, the ALJ agreed that Bass's spine disorder limited his ability to "lift and carry heavy objects and perform postural activities," R. 24, but he rejected Bass's statements "to the extent that they were inconsistent with" an RFC for a full range of light work without specific postural restrictions, R. 25, 27. ALJ Kilbane found Bass's statements to be "totally out of proportion to" the objective medical evidence in the record and Bass's "conservative," "infrequent treatment." *Id.*

The ALJ gave "great weight" to Drs. Nuckols's and Cader's opinions that Bass could perform a full range of light work. R. 28. He found the state-agency reviewers' opinions to be "balanced," "objective," and "most consistent with the longitudinal review of the evidence of record." *Id.* The ALJ's final RFC is arguably less restrictive than the doctors' assessments in that it does not impose any limitations on Bass's ability to push, pull, or engage in certain postural activities. *Compare* R. 25, *with* R. 77, 86, 98, 108 (limiting the amount of weight Bass could push and/or pull), *and* R. 77, 86 (limiting Bass to "frequent" stooping and crouching).

C.     *Additional Evidence Considered by the Appeals Council*

The Appeals Council considered additional Free Clinic records dated between May 2011 and November 2012. *See* R. 1–2, 4–5, 387–409. Beginning in March 2011, Bass visited the Free Clinic every few months to receive treatment for diabetes and his complaints of severe back pain, muscle spasms, and leg pain and weakness. *See* R. 370, 381, 387–409. Nurse Scarce, a family

9

nurse practitioner, was Bass's primary care provider at the Free Clinic. R. 388–90, 394, 397. Dr. Edwin Harvie, M.D., also examined Bass in October 2011 and February 2012. R. 393, 396.

These medical records contain few objective laboratory findings related to anatomical or physiological phenomena, 20 C.F.R. §§ 404.1528(c), 416.928(c). *See* R. 398–99 (blood tests); R. 400–01, 407–09 (bacteria cultures); R. 402 (chest X-ray); R. 404–06 (electrocardiogram). However, the treatment notes do contain objective medical "signs"—*e.g.*, anatomical phenomena shown by observable facts that can be medically described and evaluated. 20 C.F.R. §§ 404.1528(b), 404.1529(a), 416.928(b), 416.929(a). For example, Dr. Harvie and Nurse Scarce observed that Bass had an "abnormal" gait and walked "slow[ly] & cautiously" with a cane. *See* R. 397 (May 2011); R. 395 (Aug. 2011); R. 393 (Oct. 2011); R. 396 (Feb. 2012); R. 389 (Oct. 2012). Nurse Scarce assessed chronic low back pain with radiculopathy[7] twice in the fall of 2012. *See* R. 388, 390. She provided Bass with prescription-strength pain medications and muscle relaxants including Arthrotec, Skelaxin, Neurontin, and Cymbalta. *See* R. 387, 390, 394, 397. Bass reported that these medications helped "a little bit," but did not resolve his pain and muscle spasms. *See* R. 388 (Nov. 2012); R. 389 (Oct. 2012); R. 394 (Sept. 2011). On November 20, 2012, Nurse Scarce increased Bass's Neurontin dosage to 300 mg twice daily. R. 388.

IV. Discussion

Bass's overarching objection is that the ALJ's RFC for a full range of light work is not supported by substantial evidence in the current record, which includes new evidence of his physical condition after December 15, 2010. *See* Pl. Br. 7, 10–17, ECF No. 13. He argues that

---

[7] Lumbar radiculopathy is a nerve-root disorder. Common symptoms include pain radiating from the lower back down the back of the legs, numbness and tingling, muscle weakness, and muscle spasms. Am. Ass'n of Neuromuscular & Electrodiagnostic Medicine, *Lumbar Radiculopathy*, http://www.aanem.org/Education/Patient-Resources/Disorders/Lumbar-Radiculopathy.aspx (last visited Dec. 19, 2014). Bass was also diagnosed with lumbar radiculopathy on January 17, 2010, after visiting the emergency department for chronic back pain. *See* R. 357.

10

the Commissioner's final decision should be reversed and his case remanded so that a proper fact finder can weigh and reconcile the additional evidence in the first instance.[8]

A.  *The Legal Framework*

When a claimant appeals an ALJ's ruling, the Appeals Council first makes a procedural decision whether to grant or deny review. *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005). In deciding whether to grant or deny the claimant's request for review, the Appeals

---

[8] The Commissioner argues in response that Bass's attorney has not shown "good cause" for his failure to submit Bass's records to the ALJ. *See* Def. Br. 9–10, ECF No. 15. This argument mistakenly assumes that Bass first submitted his additional evidence to the District Court rather than to the Appeals Council. *See id.* At oral argument, counsel for the Commissioner acknowledged the mistake and agreed that there is no "good cause" requirement where, as here, the agency incorporated the claimant's additional evidence into the administrative record submitted to the District Court. *Riley v. Apfel*, 88 F. Supp. 2d 572, 579 n.12 (W.D. Va. 2000) (Kiser, J.) ("There is a 'good cause' requirement for a sentence six remand, but not for a sentence four remand.").

Nonetheless, it is worth noting that Bass was unrepresented for several months before he appeared *pro se* at his hearing on September 5, 2012. *See* R. 33, 158. Although Bass told ALJ Kilbane that healthcare providers at the Free Clinic of Danville were "treating" him at that time, R. 39, 42, ALJ Kilbane did not ask Bass if the Free Clinic might have medical records dated after April 5, 2011. *See* R. 34, 39, 42, 47. Indeed, there is no evidence that the agency tried to obtain Bass's Free Clinic records after April 27, 2011—nearly seventeen months before the hearing. *See* R. 383–84. Had ALJ Kilbane followed up on Bass's testimony, he likely would have found the Free Clinic treatment records from May, August, September, October, and December 2011, and February 2012. *See* R. 391–97.

ALJs have "a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record[; they] cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Thomas v. Comm'r of Soc. Sec.*, No. 4:10cv15, 2011 WL 867092, at *4 (W.D. Va. Mar. 11, 2011) (Kiser, J.) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1173 (1986)). The Fourth Circuit has long held that ALJs must "assume a more active role" in helping *pro se* claimants adequately develop their records. *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996) (citing *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980)). At the very least, ALJ Kilbane should have asked Bass to obtain his recent treatment notes and left open the record for a reasonable period. *See Fleming v. Barnhart*, 284 F. Supp. 2d 256, 273 (D. Md. 2003). His failure to do so in this case was harmless only because Bass's new attorney later submitted his Free Clinic records to the Appeals Council. *Cf. id.* at 272–73 ("Evidentiary gaps that result in unfairness or clear prejudice require a remand." (citing *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980)).

11

Council must consider any additional evidence that is new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b).

"Evidence is 'new' if it is not duplicative or cumulative, and is material 'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Davis*, 392 F. Supp. 2d at 750 (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991) (en banc)). Evidence of medical impairments and related symptoms that the ALJ discussed in his opinion necessarily relates to the period on or before the date of the ALJ's decision. *See Wilson v. Colvin*, No. 7:13cv113, 2014 WL 2040108 at *4 (W.D. Va. May 16, 2014). The Appeals Council will grant review "if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record," including any additional evidence that it was required to consider. 20 C.F.R. §§ 404.970(b), 416.1470(b).

Bass submitted his Free Clinic records to the Appeals Council, which incorporated them into the administrative record before denying his request for review. R. 1–2, 4–5, 285–86, 387–409. The Appeals Council "considered" the medical records, but found without explanation "that th[e] information [did] not provide a basis for changing the [ALJ's] decision." R. 2. Under such circumstances, this Court must review the entire record, including the additional evidence, to determine whether substantial evidence supports the ALJ's underlying factual findings.[9] *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *Riley v. Apfel*, 88 F. Supp. 2d 572, 577 (W.D. Va. 2000) (Kiser, J.). This can be a difficult task where, as here, the Appeals Council did not explain

---

[9] The Court then may enter judgment "affirming, modifying, or reversing" the Commissioner's final decision "with or without remanding the cause for rehearing" in light of the new evidence. 42 U.S.C. § 405(g) (sentence four); *Riley*, 88 F. Supp. 2d at 556–57 (noting that a sentence-six remand, which "includes no ruling as to the correctness of the administrative determination," is not an option where "the 'new' evidence . . . was 'incorporated into the record in a prior proceeding' and is already in the record" filed with the district court (quoting 42 U.S.C. § 405(g) (sentence six)).

12

why the additional evidence did not render the ALJ's "findings[] or conclusion contrary to the weight of the evidence," R. 2, now in the record. *See Riley*, 88 F. Supp. 2d at 579–80.

The Appeals Council is not required to explain how it considered additional evidence or justify its decision to deny the applicant's request for review. *Meyer*, 662 F.3d at 702, 705–06. A federal court reviewing the Commissioner's final decision, however, is not permitted to make factual findings or attempt to reconcile new evidence with conflicting and supporting evidence in the record. *See id*. The Judges in this District maintain that balance by reviewing the entire record to determine if there is a "reasonable possibility" that the additional evidence would change the Commissioner's final decision that the applicant is not disabled. *See, e.g.*, *Brown v. Comm'r of Soc. Sec.*, 969 F. Supp. 2d 433, 441 (W.D. Va. 2013) (Moon, J.); *Barts v. Colvin*, No. 4:13cv23, slip op. 10 (W.D. Va. July 3, 2014) (Hoppe, M.J.), *adopted by* 2014 WL 3661097 (July 22, 2014) (Kiser, J.). Reversal and remand is required where "the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Sherman v. Colvin*, No. 4:13cv20, slip op. at 17 (W.D. Va. June 19, 2014) (Hoppe, M.J.), *adopted by* 2014 WL 3344899, at *1 (July 8, 2014) (Kiser, J.). The same is appropriate where new evidence undermines the ALJ's factual findings and rationale or fills an "evidentiary gap [that] played a role in [the ALJ's] decision to deny benefits." *Meyer*, 662 F.3d at 707; *Arrington v. Colvin*, 4:13cv11 (W.D. Va. May 21, 2014) (Hoppe, M.J.) (recommending reversal and remand where new evidence undermined the ALJ's reasons for concluding that the applicant's mental impairment was non-severe), *adopted by* 2014 WL 2586237, at *1 (June 10, 2014) (Kiser, J.); *cf. Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (ordering remand where evidence submitted to, but not considered by, the Appeals Council "contradict[ed] both

13

the ALJ's findings and underlying reasoning" for denying Jackson's claim and "reinforced the credibility of Jackson's testimony").

*B.     Analysis*

The additional Free Clinic records contain ample evidence justifying reversal and remand in Bass's case. Contrary to the Commissioner's argument, Def. Br. 10, these treatment notes do not merely parrot Bass's earlier subjective statements. They provide new proof that Bass received "ongoing treatment for [his] complaints" of chronic pain, muscle weakness, and falling on many more than "two occasions" during the relevant period, R. 27. *Cf. Moe v. Barnhart*, No. 5:06cv14, 2007 WL 433160, at *2 (W.D. Va. 2007) (finding that additional medical records were new because they provided proof that the claimant continued treatment after the date on which the ALJ assumed her treatment would be finished). They also show that Bass was prescribed pain medication and muscle relaxants, which the ALJ had questioned, R. 27, beyond what Bass received in early 2011. *Compare* R. 208, 225, *with* R. 387, 388, 389, 390, 394, 395. Finally, the records contain an examining doctor's and nurse's notes that Bass walked "abnormally" or "slowly and cautiously" with a cane at visits in 2011 and 2012. *See* R. 389, 390, 393, 395. These medical signs shed new, objective light on the state-agency reviewer's opinion that Bass could "move about satisfactorily" in March 2011. R. 78, 89. Thus, the records are not cumulative. They also fall within the period on or before the date of the ALJ's decision.

The evidence is material because it contradicts factual findings and rationale that factored heavily in ALJ Kilbane's decision to deny benefits. The nine additional Free Clinic records dated between May 17, 2011, and November 20, 2012, negate ALJ Kilbane's finding that Bass "sought treatment on only two occasions" after December 15, 2010. R. 27. *Cf. Arrington*, 2014 WL 2586237, at *10 (Hoppe, M.J.) (finding that additional medical records were material because

14

they negated the ALJ's finding that a psychiatrist's "limited treatment was not suggestive of a treating relationship"). They also contradict ALJ Kilbane's findings that Bass "does not seek ongoing treatment" for severe pain and weakness "and has not been prescribed . . . any strong pain killing medication."[10] R. 27. A Free Clinic medication log from fall 2012 shows that Bass was taking Skelaxin, Neurontin, and Cymbalta, R. 387, which are prescription-strength pain medications.[11] Because Bass's perceived lack of treatment "pervades the ALJ's decision" to deny benefits, there is a reasonable possibility that new evidence to the contrary could change the outcome in Bass's case. *Alexander v. Colvin*, No. 7:13cv250, 2014 WL 4093838, at *5–6 (W.D. Va. July 18, 2014).

The new medical records also call into doubt ALJ Kilbane's evaluation of Bass's credibility. *See id.* at *5 (finding that additional medical records were material because they called into doubt the ALJ's credibility determination). ALJ Kilbane found that Bass could perform a full range of light work in part because Bass's "complaints of disabling pain [were] totally out of proportion to his infrequent treatment, the conservative nature of his treatment, and the objective medical evidence" in the original record. R. 27. The Free Clinic treatment notes demonstrate that Bass received treatment every few months and that Nurse Scarce recommended that he undergo additional diagnostic tests or treatment at the University of Virginia.[12] R. 390.

---

[10] ALJ Kilbane did not mention that Bass had been instructed to take 50 mg Arthrotec three times daily "for pain" during his April 5, 2011, visit to the Free Clinic. *See* R. 26–27, 379, 381. Arthrotec is a prescription-strength non-steroidal anti-inflammatory drug used to treat osteoarthritis and rheumatoid arthritis. *See* Pfizer, *Arthrotec*, http://labeling.pfizer.com/ShowLabeling.aspx?id=526 (rev. Sept. 2014).

[11] *See* Pfizer, *Skelaxin*, http://labeling.pfizer.com/ShowLabeling.aspx?id=689 (rev. Sept. 2011); Pfizer, *Neurontin*, http://labeling.pfizer.com/ShowLabeling.aspx?id=630 (rev. Sept. 2013); Lilly USA, *Cymbalta*, http://pi.lilly.com/us/cymbalta-pi.pdf (rev. Nov. 2014)

[12] The Free Clinic records also reinforce Bass's testimony that he did not seek more aggressive treatment from outside providers because he did not have insurance and could not afford to pay for treatment. *See* R. 39, 42, 395. ALJ Kilbane did not acknowledge Bass's uncontradicted

15

Dr. Harvie's and Nurse Scarce's findings that Bass walked with a cane and an "abnormal" gait, R. 393, 395, "reinforce[] the credibility" of Bass's hearing testimony that he could not stand and walk for prolonged periods, R. 40. *Jackson*, 467 F. App'x at 218. They are arguably inconsistent with Bass's April 2011 comment that he "walks regularly," R. 381, which the ALJ cited as a reason for discrediting Bass's testimony, R. 27.

There is a reasonable possibly that this evidence could change the ALJ's credibility determination. *Cf. Wade v. Colvin*, No. 7:12cv621, 2013 WL 4520273, at *6 (W.D. Va. Aug. 26, 2013) (reversing and remanding in part because an examining physician's new opinion that the claimant "was a candidate for surgery" conflicted with another opinion that factored into the ALJ's credibility determination). ALJ Kilbane credited objective medical evidence showing that Bass's severe spine disorder "could reasonably be expected to cause . . . his alleged symptoms" but found that Bass's "complaints of disabling pain [were] totally out of proportion to his infrequent treatment, the conservative nature of his treatment, and the objective medical evidence" in the original record. R. 27. The Free Clinic records fill evidentiary gaps in each area, thus "call[ing] into question the ALJ's credibility determination to the point that a reasonable possibility of a different outcome exists." *Alexander*, 2014 WL 4093838, at *5.

Dr. Harvie's and Nurse Scarce's observations that Bass had an "abnormal" gait and walked "slow[ly] & cautiously" with a cane, R. 397 (May 2011); R. 395 (Aug. 2011); R. 393 (Oct. 2011); R. 396 (Feb. 2012); R. 389 (Oct. 2012), also contradict Dr. Nuckols's opinion that Bass could "move about satisfactorily" during the relevant period. R. 76, 80. They also undermine the ALJ's finding that Dr. Nuckols's opinion that Bass could perform a full range of

---

testimony to that effect, R. 39, 42, 375, in his original decision, R. 26–28. The Commissioner must adequately consider this evidence on remand. *See generally Sydnor v. Colvin*, No. 4:13cv41, slip op. at 17–20 (W.D. Va. Sept. 2, 2014) (Hoppe, M.J.), *adopted by* 2014 WL 4792946, at *1 (Sept. 25, 2014) (Kiser, J.).

light work deserved "great weight" because it was the "most consistent" with Bass's full record. R. 28. This reasoning does not hold up on the current record.

Finally, the evidence of Bass's physical condition now in the record could persuade an ALJ to impose additional limitations on Bass's RFC. Indeed, under one possible scenario, an RFC limiting Bass to sedentary work could direct a finding of "disabled" based on his age, education, and work history. *See* R. 28–29; 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.14; *cf. Sydnor v. Colvin*, No. 4:13cv41, slip op. at 21 (W.D. Va. Sept. 2, 2014) (Hoppe, M.J.) (recommending reversal and remand in part because the ALJ "could conceivably find" that the regulations directed a finding of disabled), *adopted by* 2014 WL 4792946, at *1 (Sept. 25, 2014) (Kiser, J.). Accordingly, I find that the evidence is new and material.

V. Conclusion

The Commissioner's final decision is not supported by substantial evidence in the current record, which contains new and material evidence of Bass's physical condition during the relevant period. The Appeals Council's summary denial means that no fact finder has weighed this evidence or attempted to reconcile it with the conflicting and supporting evidence in the current record. This Court cannot undertake that task in the first instance. Therefore, I recommend that the Court **GRANT** Bass's motion for summary judgment, ECF No. 12, **DENY** the Commissioner's motion for summary judgment, ECF No. 14, **REVERSE** the Commissioner's final decision, and **REMAND** the cause for rehearing under the fourth sentence of 42 U.S.C. § 405(g).

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such

proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: December 23, 2014

Joel C. Hoppe
United States Magistrate Judge